(No. 46388.—

CHARTER FINANCE COMPANY, Appellee, v. VERNON HENDERSON *et al.,* Appellants.

*Opinion filed March 24, 1975.*

Margaret Stepleton, Michael P. Seng, and Lawrence L. Ruemmler, of Land of Lincoln Legal Assistance Foundation, Inc., of Cairo, for appellants.

No appearance for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Charter Finance Company, sued defendants Vernon and Helen Henderson in the circuit court of Alexander County to recover on a promissory note. Following a bench trial, judgment was rendered for the plaintiff in the amount of $1,462.09. The Appellate Court for the Fifth District affirmed (15 Ill. App. 3d 1065), one judge dissenting, and we granted leave to appeal.

Charter Finance is a Missouri corporation, licensed to do business under the small-loan laws of Missouri, with its principal office at Cape Girardeau, Missouri. It is not licensed by the Illinois Department of Financial Institutions to engage in the business of making loans of more than $800 and less than $5,000 as provided by the Illinois Consumer Installment Loan Act (Ill. Rev. Stat. 1971, ch. 74, par. 51 *et seq.*). Nor has Charter obtained from the Illinois Secretary of State a certificate of authority to transact business as a foreign corporation in Illinois (Ill. Rev. Stat. 1971, ch. 32, par. 157.102). Charter has no offices or employees located in Illinois. Approximately 2-3% of its business is with Illinois residents, apparently transacted through its office in Cape Girardeau, which is located on the Missouri-Illinois border.

Defendants contend that Charter Finance should not have been allowed to maintain this action because it had not obtained from the Illinois Secretary of State the requisite certificate of authority to transact business in this State. Defendants further assert that the courts below erred in failing to apply the provisions of the Consumer Installment Loan Act to the transaction between Charter Finance and the Hendersons.

Charter's only witness was its general manager, W. R. Withers, who identified a promissory note for $1,872 signed by Vernon and Helen Henderson, payable to Charter Finance. The note appeared to be a refinancing of a prior loan which had a remaining balance of $1,208.42.

With various insurance and filing charges added, the amount financed totaled $1,441.48, on which was assessed, at an annual percentage rate of 17.84%, a $430.52 finance charge. The note indicates a security interest had been taken in a 1962 Chevrolet pickup truck and certain household goods, furniture and appliances. The date of the loan was May 13, 1970, with the first of 36 monthly payments of $52 due on June 25, 1970. The foregoing information had been typed into appropriate spaces throughout the note. Defendants' signatures appeared at the bottom of the note, witnessed by H. G. Boner, an employee of Charter Finance. These signatures were not dated, but Vernon Henderson's signature, dated May 11, 1970, also appeared in a separate enclosed block within the note acknowledging that he had read the disclosures about insurance costs and desired the insurance coverage set forth in the note. Withers, who had not been present at the signing of the note or personally involved in the transaction, stated that the "purpose of this loan as I can be able to ascertain it is to bring this man to a condition of trying to get him in better form of paying methods than he had been in the past."

Vernon and Helen Henderson resided with their six children in Olive Branch, Illinois. Their testimony was the only evidence they presented. Their answers, although substantially the same, were confusing, particularly with reference to the identity of the company employees who came to their home. They stated that they had borrowed money on several occasions in the preceding five or six years from Charter Finance and, though uncertain as to the amount, they admitted owing Charter money at the time the $1,872 note was executed. They stated that H. G. Boner, the Charter employee who witnessed their signatures on the note, had come to their home on behalf of the company and asked them for money as payment on their outstanding loan. Upon being told that they had no money, he asked them to sign a piece of paper, supposedly

for the benefit of the auditors of Charter Finance, which would not affect the amount of their previous loan. They both signed the paper. Although admitting that their signatures appeared on the completed $1,872 note, they claimed that none of the terms were typed in at the time they signed and that they would not have signed without Boner's assurance that the paper was only to satisfy the auditors and would not affect their previous loan. Mr. Henderson could not read; Mrs. Henderson was a fair reader but did not read the note because she "couldn't read good enough to really understand it." They testified that Boner did not read the note to them, explain its terms or give them a copy of the note. They first saw the completed note when served with the complaint in the trial court action.

The initial issue for determination is whether Charter Finance was precluded from maintaining this action by sections 102 and 125 of the Illinois Business Corporation Act, which state:

> "A foreign corporation organized for profit, before it transacts business in this State, shall procure a certificate of authority so to do from the Secretary of State." Ill. Rev. Stat. 1971, ch. 32, par. 157.102.
>
> "No foreign corporation transacting business in this State without a certificate of authority is permitted to maintain a civil action in any court of this State, until such corporation obtains a certificate of authority." Ill. Rev. Stat. 1971, ch. 32, par. 157.125.

Since Charter has not obtained a certificate of authority, it is urged that it cannot maintain this action if it was "transacting business" in Illinois under sections 102 and 125 of the Business Corporation Act.

The only proof in this record indicates that Charter's business activity in Illinois was minimal, and, we believe, insufficient to constitute the transaction of business in this State for purposes of sections 102 and 125. It cannot even be determined with certainty that this note was completed in this State. Charter's activity in Illinois as to this loan

involved only a trip by Boner, or a company employee named Patterson, to the Henderson home to obtain their signatures on an apparently blank note, which was presumably completed and approved at Charter's Cape Girardeau office since the terms were typed, although no conclusive evidence was presented on that point. The only other evidence of business activity by Charter in Illinois is the testimony of the Hendersons that Boner (or Patterson) had come to their home on a previous occasion in 1969, also to get their signatures on a note which apparently was an earlier renewal of this same loan. While Withers estimated that 2-3% of Charter's business was with Illinois residents, he said nothing to indicate that Charter employees solicited or conducted that business within Illinois. Normal business practices would lead to the assumption that the Illinois borrowers probably went to the Cape Girardeau office to arrange their loans, especially since Charter had no office or employees located in Illinois. In fact, defendants seem to concede for purposes of their other argument that the loan was made in Missouri, contending only that it was not "legally" made in Missouri. But even if the entire transaction took place in Illinois, Charter would still not have transacted business in this State for purposes of sections 102 and 125. This court has held that "Entering into one contract or transacting an isolated business act is not engaging in business in this State." (*Plew v. Board* (1916), 274 Ill. 232, 236; see also *Alpena Portland Cement Co. v. Jenkins & Reynolds Co.* (1910), 244 Ill. 354.) The same position has been taken by the courts of numerous States with provisions similar to sections 102 and 125 in their corporate laws. (See *Riblet Tramway Co. v. Monte Verde Corp.* (10th Cir. 1972), 453 F.2d 313; *Wilson v. Williams* (10th Cir. 1955), 222 F.2d 692; *Long Manufacturing Co. v. Wright-Way Farm Service, Inc.* (1974), 391 Mich. 82, 214 N.W.2d 816; *Aero Service Corp. v. Benson* (1962), 84 Idaho 416, 374 P.2d 277; *Redi-Spuds, Inc. v. Dickey* (1956), 230 La. 406, 88 So. 2d

801.) Since Charter's dealings with the Hendersons in 1969 and 1970 were, at most, an isolated business transaction, its action to recover on the note is not precluded by sections 102 and 125 of the Business Corporation Act.

We note also that even if Charter's activities had constituted the transaction of business, sections 102 and 125 may still have been inapplicable. In *Textile Fabrics Corp. v. Roundtree* (1968), 39 Ill.2d 122, 125, this court held that our "statutes relative to foreign corporations cannot be given effect in such a way as to impede the Federal authority and responsibility to insure the free flow of interstate commerce." In a similar case involving a provision in Mississippi's corporate law identical to section 125, the United States Supreme Court recently reached the same result, holding that "Mississippi's refusal to honor and enforce contracts made for interstate or foreign commerce is repugnant to the Commerce Clause." (*Allenberg Cotton Co. v. Pittman* (1974), 419 U.S. 20, 34, 42 L. Ed. 2d 195, 206, 95 S. Ct. 260, 267.) Although we need not rule directly on the question, it is at least arguable that Charter's transactions with Illinois residents, involving the flow of money across State lines, were contracts made for interstate commerce which, under *Roundtree* and *Allenberg,* Illinois courts cannot refuse to enforce.

Defendants next argue that the provisions of the Illinois Consumer Installment Loan Act should have been applied (Ill. Rev. Stat. 1969, ch. 74, par. 51 *et seq.*). That act is "inapplicable to loans legally made in any other State." (Ill. Rev. Stat. 1969, ch. 74, par. 69.) Defendants appear to concede here that the loan was made in Missouri. That issue was contested in the appellate court, which held that defendants had failed to sustain their burden of establishing that completion of the note (which, under their testimony, must have occurred in Missouri when the terms were typed in plaintiff's offices) was not accomplished in accordance with authority given by them. (Ill. Rev. Stat. 1969, ch. 26, par. 3—115; Mo. Rev. Stat. sec.

400.3—115.) That issue is not renewed here, but defendants contend the note was not "legally" made in Missouri because Charter failed to comply with the disclosure provisions of Federal (15 U.S.C. sec. 1639 (1970)) and Missouri (Mo. Rev. Stat. sec. 408.130) law. The disclosure provisions of Illinois (Ill. Rev. Stat. 1969, ch. 74, par. 66), Missouri and Federal law are very similar. Since the required information was set forth on the face of the completed note, Charter's violation, if any, occurred. through failure to provide the Hendersons a copy of the completed note. They denied receiving a copy, although the last line of the note, just preceding their signatures, states: "Borrower further acknowledges that he received a fully completed copy of the above Note-Loan Statement." However, even if Charter violated the disclosure provisions of Federal and State law, such violations do not mean that the note was illegally made in another State. Missouri law specifically provides that any note on which excess interest is charged will not be enforceable (Mo. Rev. Stat. sec. 408.150), but neither Missouri nor Federal law provides that failure to make proper disclosures renders a note unenforceable. Criminal and civil penalties may be imposed for failure to properly disclose (15 U.S.C. secs. 1611, 1640; Mo. Rev. Stat. sec. 408.220), but the note itself is still valid and enforceable. The interest charged on the note, although excessive under Illinois law (Ill. Rev. Stat. 1969, ch. 74, par. 65(3)), was proper in Missouri (Mo. Rev. Stat. sec. 408.110); hence the loan to the Hendersons was legally made in Missouri and Illinois law is inapplicable. We agree with the appellate court that any remedies to which defendants may be entitled under Federal or State law for improper disclosure must be pursued in a separate action.

An issue was raised in the appellate court regarding the completion of the blank note, but the defendants do not argue that issue before this court. The appellate court opinion discusses the issue fully and accurately, and we see

330

no need to add to that discussion.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*