Kathleen M. DZADOVSKY, Plaintiff,

v.

LYONS FORD SALES, INC. and Capitol
Consumer Discount Co., Defendants.

Civ. A. No. 77–349.

United States District,
W. D. Pennsylvania.

June 21, 1978.

James W. Carroll, Jr., Pittsburgh, Pa., for plaintiff.

Donnell D. Reed, Pittsburgh, Pa., for Capitol Consumer Discount Co.

William S. Webber, Pittsburgh, Pa., for Lyons Ford Sales, Inc.

## OPINION

WEBER, Chief Judge.

In 1976 the plaintiff bought a 1971 Datsun automobile from defendant Lyons Ford Sales, Inc. who assigned their right to receive the balance of the purchase price to defendant Capitol Consumer Discount Company (Consumer Discount). Consumer Discount and the plaintiff entered into a credit agreement which obligated the plaintiff to repay the balance of the purchase price plus a finance charge to Consumer Discount. The plaintiff defaulted on the loan, and Consumer Discount sued and recovered a judgment which relieved the plaintiff of the burden of paying a substantial part of the money she borrowed. The plaintiff now brings this action in federal court on the grounds that the disclosure statement used by Consumer Discount did not comply with the Federal Consumer Credit Protection Act (hereinafter, "Truth in Lending Act"), 15 U.S.C. § 1601 *et seq.* and various regulations promulgated under the Act, 12 C.F.R. § 226 *et seq.* The plaintiff's motion for summary judgment is now before the Court. The plaintiff alleges that the disclosure statement she signed and which her parents co-signed is misleading and technically inaccurate. She makes no claim that she was actually deceived or injured by the alleged technical inaccuracies of the statement.

■ The purpose of the credit disclosure provisions of the Truth in Lending statutes and their underlying regulations is to insure meaningful disclosure of credit terms so that the consumers are able to readily compare various available credit terms and to avoid the uninformed use of credit, 15 U.S.C. § 1601, 82 Stat. 146 (1968); see, *Zeltzer v. Carte Blanche Corp.,* 514 F.2d 1156 (3d Cir. 1975). Although the regulations promulgated under the Truth in Lending statutes must be "clear and conspicuous", 15 U.S.C. § 1631 (1968), the statute expressly states that required disclosures need not appear in the order set forth in the statute. In addition, the statute allows the regulations to permit the use of terminology different from that used in the statute if the language used in the credit agreement "conveys substantially the same meaning", 15 U.S.C. § 1632(a) (Supp.1978), unless the regulations provide that specific words be used.

Although other courts have not apparently addressed the issues presented by the plaintiff's motion for summary judgment, they have discussed the policies of the Truth in Lending Act in the context of related issues and provide guidance in evaluating this case of first impression. In

*Jumbo v. Nester Motors,* 428 F.Supp. 1085 (D.Ariz.1977), plaintiff Robert Jumbo and the defendant entered an agreement for the credit sale of a pick-up truck. The plaintiff filed a complaint under the Truth in Lending Act on the grounds that the defendant did not give him a copy of the security agreement when he signed the security agreement and took delivery of the truck. The court acknowledged that the failure to provide a copy of the security agreement at the time of delivery violated certain provisions of the Act but indicated that the circumstances of the case did not warrant the imposition of civil liability. The court emphasized that the plaintiff and his wife understood the terms of the credit agreement and that the agreement was re-drafted several times until satisfactory to all parties. The Court held that the undisputed technical violation of the Act in no way undermined "the Congressional policy of assuring meaningful disclosure of credit terms and avoiding the uninformed use of credit," 428 F.Supp. at 1087. So emphasizing that the technical violation of the Act did not obstruct the achievement of the Congressional purpose of meaningful disclosure and fully informed debtors, the court granted the defendant's motion for summary judgment.

In *Shields v. Valley Natl. Bank of Arizona,* 56 F.R.D. 448 (D.Ariz.1971), the court emphasized that the rigorous technical requirements and attorney's fees provisions of the Truth in Lending Act should not become a tool for the unjust enrichment of debtors and their lawyers. Denying class certification under Fed.R.Civ.P. 23 to a proffered group of plaintiffs, the court said:

"At a time when large business firms in general appear to be a scapegoat for a great many of our Nation's problems, the Courts should not gratuitously add the final straw. The Truth-in-Lending Act has laudable purposes and should be strictly enforced by the Courts, but it should not be allowed to be used as means of oppression or harassment or unjust enrichment. An interpretation of the Act to allow class actions, such as sought by Mr. Shields, could be the means of curing an illness by killing the patient and in the process promoting unnecessary litigation mainly for the benefit of a few lawyers ready and willing to promote such cases.

Having so concluded, the Court finds that the plaintiff's attempt to make his individual action a class action, must fail. 56 F.R.D. at 451.

 These decisions confirm what seems intuitively obvious to the Court, namely, that the plaintiff should not win recovery of finance charges and attorney's fees under the Truth in Lending Act unless there is some relationship between the alleged violation of the Act and the Congressional purposes of meaningful disclosure and fully informed debtors. If a debtor is fully informed and completely understands the terms of the credit agreement, but the creditor failed to comply with some requirement of the Act which does not impede the debtor's understanding of the terms of his loan, there is no sensible rationale—either in law or in equity—for awarding damages.

Despite the persistent questioning of the Court at the pretrial conference, the plaintiff's attorney gave no indication that the plaintiff was deceived or over-reached in any way by the disclosure document. Furthermore, plaintiff's counsel was unable to attribute the plaintiff's default on her loan to any particular deficiency on the disclosure document. At the pretrial conference, the plaintiff's attorney said that the bases for her claim were certain alleged technical deficiencies on the disclosure statement which are obviously unrelated to her inability to repay the debt she voluntarily assumed. After reviewing the disclosure document and the facts set forth in the pleadings and at the pretrial conference, we must conclude that any claim which the plaintiff now brings is not to redress any injury or deception but rather to capitalize on the generous recovery and attorney's fee provisions of a remedial statute. The tack plaintiff chooses is to focus on largely immaterial aspects of a clear, straightforward credit agreement which are clearly unrelated to her eventual default. Because the

plaintiff has admitted that the violations she alleges did not impede her understanding of the terms of her loan and hence do not relate to the Congressional purpose of the Truth in Lending Act, we must deny the plaintiff's motion for summary judgment.

 In any event, we have examined each of the plaintiff's allegations of technical non-compliance and are unable to conclude that any one of them forms the basis of a violation of the Truth in Lending Act or its underlying regulations.

1. The disclosure document describes the total finance charge ($517.74) as comprised of a "regular charge" ($502.74) plus a "prepaid finance charge" ($15.00). The plaintiff argues that these finance charge components are not disclosed in the precise terminology required by Regulation Z, 12 C.F.R. § 226.8(d)(3), and, as disclosed by the defendants, are not meaningful to the consumer. The plaintiff overlooks that § 226.-8(d)(3) does not prescribe any precise language for the components of the finance charge but only requires that the term "finance charge" be used to describe the sum of these components.

In addition, as to whether the finance charge components were meaningfully disclosed to a consumer, we cannot see how any consumer, after examining the whole document, could come to any conclusion but that the total interest expense was $502.74 and that $15.00 was a prepaid service charge.

2. The plaintiff contends that the defendants' designation of $15.00 as a "prepaid" finance charge is a false disclosure which violates 12 C.F.R. § 226.8(d)(2) because the plaintiff did not actually pay this charge before signing the document. This argument presumes that the use of the phrase "prepaid finance charge" is a false disclosure unless the plaintiff actually pays the entire charge before signing the document. We are unable to join the plaintiff in her conclusion that the disclosure document is defective because the phrase was not used in that sense here (as both parties understood when the agreement was signed).

The document later describes the prepaid finance charge as a service fee for making the loan, and the amount is plainly included in the total finance charge which is to be repaid over three years. Accordingly, it appears that the service charge was prepaid only in the sense that the first $15 the plaintiff paid to the creditor was used to pay the costs of administering the whole loan. Although the draftsmanship may be imprecise, the disclosure is neither false nor misleading.

3. The plaintiff argues that, since the $15 "prepaid finance charge" was a service charge for the loan and described as such later in the document, it should never have been initially called a "prepaid finance charge" but should have been called a service charge instead. Once again, the plaintiff's argument goes to style and not substance. The phrase "prepaid finance charge" and "service charge" are not mutually exclusive and both can correctly be used to describe the same payment without causing the whole document to fail under 12 C.F.R. § 226.6(a) which requires disclosure to be "clear and conspicuous."

4. The disclosure document describes the interest charges as "regular charges" which the plaintiff argues is meaningless to the average consumer. In the context of this particular document, this argument is meritless. "Regular charges" are listed above the prepaid finance charge and the finance charge, and we believe that even unsophisticated consumers would interpret "regular charges" as the interest expense.

5. The plaintiff states that the regular charge of $502.74 should have been described as "discount" because the amount of the regular charge—$502.74—is in fact the maximum discount allowed under Pennsylvania law, 7 Pa.Stat.Ann. § 6213(E) (Supp. 1978). The plaintiff overlooks, however, that the Pennsylvania law quoted by the plaintiff uses the words "discount" and "interest" interchangeably in limiting the maximum "discount" or "interest" allowable by law. There can be no doubt that the regular charges refer to the interest expense paid by the debtor for the use of the creditor's money.

6. The plaintiff next states that the document violates 12 C.F.R. § 226.8(d)(1) because it does not itemize individually the amount of $10.00 charged for "filing, recording and releasing" the security interest on the plaintiff's personal property. The plaintiff complains that the disclosure amount does not disclose what part of the $10 fee is used to file the security interest, what part is used to record the security interest, and what part is used to release the security interest after the debt is repaid. Filing, recording, and releasing are just stages of the whole process of obtaining a security interest for a period of time, and one stage is not so distinct and independent of any other that individual listing is required to comply with 12 C.F.R. § 216.-8(d)(1) or for "clear and conspicuous" disclosure under 12 C.F.R. § 226.6(a).

7. The plaintiff's next argument is that the document's disclosure that credit insurance is not required is not clear and conspicuous. According to 12 C.F.R. § 226.6(a), all required disclosures must be clear and conspicuous, and the terms "finance charge" and "annual percentage rate" must be more conspicuous than other terms. The disclosure that credit life insurance is not required is made in the center of the document, under a separate heading entitled "INSURANCE", and is obvious to the reader of the document. While the typeface of the disclosure itself is neither larger nor smaller than that of much of the surrounding language, the line on which it appears is separated from the preceding and following lines by unusually large spaces between lines. In view of the document's total appearance, we find that the creditors disclosed clearly and conspicuously that credit insurance was not required, and that the disclosure does not violate 12 C.F.R. § 226.-6(a) or § 226.4(a)(5).

8. The plaintiff also alleges that the defendant's failure to include the cost of credit life insurance ($24.34) in the finance charge violates Regulation Z, 12 C.F.R. § 226.4(a)(5) which requires such inclusion unless the document states that such insurance coverage is not required and the debtor gives "specific dated and separately signed affirmative written indication" that he desires insurance coverage, § 226.-4(a)(5)(ii). We find that the creditor's failure to include in the finance charge the cost of credit life insurance does not violate Regulation Z, § 226.4(a)(5) for at least two reasons. First, the disclosure fits within the exception to § 226.4(a)(5) because the creditor properly disclosed that insurance coverage was not required and because the debtor clearly expressed her desire for credit life insurance by signing the disclosure document in a separate location apart from her signature at the bottom of the document. Second, the cost of credit life insurance is clearly and conspicuously disclosed on the document and included in the "amount financed."

9. The plaintiff complains that the defendant's computation of the "annual percentage rate" is in error because, if the cost of credit life insurance had been included in the finance charge as it allegedly should have been, a different, "annual percentage rate" would have resulted. Our prior holding that the regulations do not require the creditor to include the cost of credit life insurance in the finance charge disposes of this argument *a fortiori*.

10. The plaintiff argues that the security agreement violates Pennsylvania law, and hence Regulation Z, 12 C.F.R. § 226.8(b)(5) by covering "replacement of collateral" which the plaintiff contends is "after acquired property" and is not a proper subject of a security interest in Pennsylvania. After-acquired property, however, may be the subject of a security interest is the debtor acquires an interest in such property within 10 days after the secured party gives value to the debtor, 12A Pa.Stat.Ann. § 9-204(4)(b). In the security agreement involved here, the defendant's interest in "replacement of collateral" is limited to property "of like kind acquired within 10 days" of the loan and, accordingly, does not violate 12A Pa.Stat.Ann. § 9-204(4)(b).

Even if the security agreement did violate Pennsylvania law, we would not accept the plaintiff's contention that the disclosure

of a security interest which is invalid under state law inevitably amounts to a violation of Regulation Z, § 226.8(b)(5). First, the language of § 226.8(b)(5) does not even impliedly state that violations of state law provisions constitute violations of that section. Second, since the language of § 226.-8(b)(5) does not expressly require agreements to comport with state law, such a requirement could exist only by judicial implication. It is questionable whether the violation of an implied duty of § 226.8(b)(5) triggers the remedies of the Truth in Lending Act, see *Kessler v. Assoc. Fin. Serv. Co. of Hawaii, Inc.*, 405 F.Supp. 122, 125–26 (D.Hawaii 1975). Third, the judicial decisions which suggest that state law violations constitute an implied violation of § 226.8(b)(5) involve disclosure documents which, in addition to clearly violating state law, also are misleading on their face. Accordingly, it is difficult to determine whether these cases hold that security agreements violate § 226.8(b)(5) because they violate state law or because they violate the expressed requirement of § 226.8(b)(5) that the security agreement should clearly identify the property it covers, see, e. g., *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976); *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976).

In this case, the disclosure document clearly identifies the collateral which secures the loan and thus does not violate 12 C.F.R. § 226.8(b)(5) on the grounds of facial ambiguity or deception. Moreover, at the time of the loan agreement, the creditor had no reason to believe that the security agreement violated Pennsylvania law. Therefore, even if the security agreement claimed did violate some aspect of Pennsylvania law, we would find that the language of the agreement does not violate the expressed language of Regulation Z, § 226.-8(b)(5) because it clearly identifies the property to which the security agreement relates.

As a final contention, the plaintiff states that the whole document is confusing. After reviewing the entire document, we believe that the document clearly and conspicuously sets forth all of the information important to the plaintiff's credit agreement.

In sum, for two distinct and independent reasons, we deny the plaintiff's motion for summary judgment. First, the alleged technical deficiencies of the document bear no relationship to the achievement of the Congressional purposes of the Truth in Lending Act. Second, none of the plaintiff's allegations amount to a violation of the Act or its regulations. Because no material issue of fact remains and because we have resolved all issues of law in favor of the non-moving defendant, we exercise our authority to grant summary judgment in the defendants' favor, see *Missouri Pacific Railroad Co. v. National Milling Co.*, 409 F.2d 882 (3d Cir. 1969); *B & P Development v. Walker*, 420 F.Supp. 704 (W.D.Pa.1976); 6 Moore's Federal Practice ¶ 56.12 at 56–331 (1977 Supp.).