**MIDLAND LEASING, INC., Appellant,**

**v.**

**Joseph L. FLYNN, d/b/a Dale and Flynn, a/k/a Dale, Flynn, Mendell and Barnes, Respondent.**

No. WD 32602.

Missouri Court of Appeals, Western District.

April 6, 1982.

Stephen W. Mendell, St. Joseph, for respondent; Dale, Flynn, Mendell & Barnes, St. Joseph, of counsel.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Appellant filed its two count petition to recover on what is acknowledged to be a "retail credit sales" contract resulting from a sale of a photocopier to respondent on July 11, 1979. The contract was alleged to be a lease purchase agreement for 60 months, with monthly rentals of $186.67 during that time except for the first and last months, $373.34, which were an initial deposit. At the end of the term, the lessee (respondent) was to purchase the equipment for 10% of the cost, plus sales tax, stated in the contract to be $575.88, and its special provisions required respondent to assume the risk of loss, and to procure insurance for appellant's benefit. It was alleged that after respondent had made 7 payments of $141.67, the equipment was destroyed by fire in respondent's law office (a fact alleged not here controverted), and respondent ceased making monthly payments. According to documents attached to appellant's suggestions in opposition to respondent's motion to dismiss, the monthly payments were reduced by $45.00 per month by deleting a maintenance provision.

Count I of the petition prayed for judgment in the amount of the balance of the contract price, $8,084.39, plus 6% interest from the date of the breach, attorney's fees (as provided for in the contract), and for costs. Count II, as alleged, sounded in quantum meruit, praying for judgment for the reasonable value of the photocopier in the amount of $8,084.39.

Respondent filed a motion to dismiss both counts of the petition upon the grounds that there was a failure to state a cause of action, and that the causes of action stated are barred by the provisions of Chapter 408, RSMo 1978 (the Retail Credit Sales Law). Without specifying any ground, the trial court dismissed the petition. There was no answer filed in the case.

Larry E. Scott, St. Joseph, for appellant; Brown, Douglas and Brown, St. Joseph, of counsel.

■ Count I of the petition sufficiently alleges a cause of action against respondent for breach of the payment provisions of the lease purchase agreement, and for breach of other of its provisions. It alleges appellant's performance in delivering the photocopier, and demand for its payment. If this was the ground that the trial court dismissed the petition, it was in error. Count II of the petition properly states a cause of action in quantum meruit, which appellant is entitled to do alternatively, for the reasonable value of the photocopier. *Edmonds v. Stratton*, 457 S.W.2d 228, 231[3] (Mo.App. 1970).

■ Without doubt the lease purchase agreement here is governed by Chapter 408. An examination of that agreement shows that there was a failure to comply with the following provisions of § 408.280: Subs. 2, printing in eight point type, and a notice to buyer in ten point bold type; and the inclusion of the nine items of information in Subs. 5. The failure to comply with § 408.-260, does not make the whole debt void and unenforceable. It is provided in Subs. 2 of § 408.370 that "Any person violating sections 408.260 to and including 408.330, except as the result of an accidental and bona fide error of computation, *shall be barred from recovery of any time charge, delinquency or collection charge on the contract."* [Italics added.]

"Time charge" is defined in § 408.250(17) as meaning the amount, however denominated or expressed, *in excess* of the cash sale price under a retail charge agreement, or the principal balance under a retail time contract which a retail buyer contracts to pay or pays for goods or services. If there were a proved violation of the Retail Credit Sales law, the seller would still be able to recover its cash sales price. The forfeiture of the time charge, delinquency or collection charge is the only civil monetary penalty under § 408.370, Subs. 2, supra, and the statute does not declare that noncompliance shall cause a contract to be void, voidable, or unenforceable. Cf. *Charter Finance Company v. Henderson*, 60 Ill.2d 323, 326 N.E.2d 372 (1975). Hence, under the pleading, taken as true for the purpose of the motion to dismiss, appellant would be entitled to recover at least the cash price of the photocopier sold to respondent. The trial court therefore erred in sustaining the motion to dismiss.

■ The Retail Credit Sales Law is obviously similar in its purpose to the federal "Truth in Lending Act", 15 U.S.C. § 1601–65; 12 CFR § 226 (Regulation Z), "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the *uninformed* use of credit." 15 U.S.C. § 1601. (Emphasis added.) See the discussion of these federal and state laws, in the comment, 35 Mo.L.Review, 382, et seq. (1970). There may be a factual issue arise on the trial of this case which could entitle appellant to recover the entire balance of its lease-purchase agreement. Such issue might be framed upon whether respondent was in fact misled by appellant's failure to comply with the disclosure aspects of the Retail Credit Sales law, and this is a further reason that the trial court erred in dismissing the petition. Under the comparable and analogous Truth in Lending Act, these cases have denied recovery to borrowers who have not been misled by a lender's disclosure: *Sanders v. Auto Associates, Inc.*, 450 F.Supp. 900, 902 (D.S.C.1978), "In order to avoid such misuse of the Truth in Lending Act, this court will strongly construe its provisions against borrowers who were not misled by a lender's disclosure but merely seek a penalty for finding a technical problem with the loan form which could not have conceivably influenced his choice of credit"; *Dixey v. Idaho First National Bank*, 505 F.Supp. 846, 854 (D.Idaho 1981), " ' "the obvious intent of Congress was to set standards by which to achieve meaningful 'truth-in-lending' and not to deviously set traps by which windfalls could be reaped by fanciful lawyers." ' *Andrucci v. Gimbel Brothers, Inc.*, 365 F.Supp. 1240, 1243 (W.D.Pa.1973) aff'd 505 F.2d 729 (3rd Cir. 1974). * * *."; and *Dzadovsky v. Lyons Ford Sales, Inc.*, 452 F.Supp. 606, 608[2, 3] (W.D.Pa.1978), where the court said, "If a debtor is fully informed and completely understands the terms of the credit agreement, but the creditor fails to comply with

some requirements of the Act which does not impede the debtor's understanding of the terms of his loan, there is no sensible rationale—either in law or in equity—for awarding damages." There are some cases holding that disclosure requirements must be strictly and explicitly adhered to, and failure to do so imposes strict liability. See *Beal v. First Federal Savings and Loan Association of Madison*, 90 Wis.2d 171, 279 N.W.2d 693, 703 (1979); and *Griggs v. Provident Consumer Discount Co.*, 503 F.Supp. 246, 250[7] (E.D.Pa.1980). Considering that one purpose of the Truth in Lending Act, and analogously the Retail Credit Sales law here, is to protect the unwary, the better rule is that of the *Sanders, Dixey* and *Dzadovsky* cases, supra, and if the evidence should show that a borrower was not misled, but knew the terms of his credit, he should not be permitted to avoid his agreement to pay time charges.

The judgment is reversed and the case is remanded.

All concur.