**George BAILEY, Plaintiff-Appellant,**

v.

**V & O PRESS COMPANY, INC.,
Defendant-Appellee.**

No. 84–3001.

United States Court of Appeals,
Sixth Circuit.

Decided Aug. 16, 1985.

Argued March 5, 1985.

Alan I. Goodman (argued), Cleveland, Ohio, Edward Swartz, Swartz & Swartz, Boston, Mass., for plaintiff-appellant.

James F. Sweeney, Michael R. Gallagher, George W. Lutjen (argued), Davis & Young, John M. Cronquist, Cronquist, Smith, Marshall & Kagel, Andrew P. Buckner, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendant-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Plaintiff-Appellant, George Bailey (Bailey), seeks reversal of a judgment entered by the district court upon a jury verdict in favor of the defendant-appellee on the issue of strict liability in tort in this diversity action in which Bailey also alleged breach of warranty and negligence. Bailey asserts that the district court erred in refusing to apply Ohio's comparative negligence statute, Ohio Revised Code § 2315.-19, which on its face is limited to negligence actions, to this case, which was submitted to the jury only on Bailey's strict tort liability claim. We affirm the district court's refusal to extend the application of O.R.C. § 2315.19 to actions based on strict tort liability. Bailey also contends that the district court erred in instructing the jury on Bailey's assumption of risk and in refusing to instruct that the defendant could be held strictly liable for failing to comply with industry standards. We find no error in the district court's instructions on these matters. Finally, Bailey asserts that the district court improperly admitted testimony regarding safety standards set forth in the Occupational Health and Safety Act (OSHA), the Ohio Industrial Code, and standards of the American National Safety Institute (ANSI). In addition, Bailey challenges the court's refusal to instruct the jury that the weight afforded such testimony should be limited in light of the court's ultimate refusal to admit these standards into evidence. While we decline to hold that the initial admission of these standards, offered to demonstrate industry standards with respect to Bailey's negligence claims, was improper under Ohio law, we hold that the district court's refusal to give a curative instruction regarding the weight of this evidence with respect to Bailey's strict liability claim, once the evidence of negligence was withdrawn, was prejudicial, consistent with our recent opinion in *Minichello v. U.S. Industries*, 756 F.2d 26 (6th Cir.1985). We therefore reverse and remand this case for proceedings consistent with the reasoning set forth below.

### I.

Bailey was injured on February 21, 1979, while employed at the Anchor Template Die Company (Anchor). Bailey was working on a 71 ton punch press when someone called him from across the room, he turned, and accidentally stepped on the press' foot pedal, activating the machine and causing the ram of the press to fall on his left hand, which had passed into the area where the ram descended, or the point of operation. As a result, appellant lost all or part of four fingers.

The press was manufactured in 1954 by the appellee, V & O Press Company. At the time of the accident, the machine was

owned by Bailey's employer, Anchor. When the machine was originally sold and subsequently, when sold to Anchor, it lacked a safety guard or other mechanism which would have prevented a point of operation accident. In addition, no warnings were affixed to the press. Anchor, however, had either manufactured or purchased various protective devices for the press, including a point of operation guard. This guard had been removed by Anchor prior to the time of the accident, however, because it was ill-suited for the particular work which it was performing. The machine had never malfunctioned. Bailey could not sue his employer, Anchor, because of the Workman's Compensation Act in Ohio.

Bailey was hired by Anchor approximately three weeks prior to his accident. His employer had specifically instructed him how to use the press and had warned him to keep his hands clear of the machine before activating it. Bailey had successfully operated the press on the day before as well as the day of the accident.

Bailey brought this action against, among other defendants, the appellee, alleging that the manufacturer's failure to install a safety guard to protect against this type of accident rendered it unreasonably dangerous. Bailey sought damages for such failure based on V & O's alleged negligence, breach of warranty, and strict liability, under Ohio law. Appellee denied all charges and asserted that Bailey was contributorily negligent, had assumed the risk, and that intervening acts of third parties were the cause of plaintiff's injuries.

During the parties' opening statements, Bailey unsuccessfully objected to appellee's references to OSHA and ANSI standards which placed the duty to guard power presses on the employer or user of the machine.

In support of his contention that the press was unreasonably dangerous when sold, Bailey offered expert testimony that the machine was defective because it lacked a point of operation guard or other safety device and because it displayed no warnings to put the operator on notice of its dangerous propensity. Bailey's expert also testified that other manufacturers offered presses with more extensive safety features at the time this machine was sold which, if incorporated, would have prevented this kind of accident. In addition, evidence demonstrated that appellee offered a safety guard for this press in the late twenties and early thirties which, if used, would have prevented this type of point of operation accident.

In defense, appellee sought to demonstrate that the numerous uses and applications of power presses preclude manufacturers from providing a universal guarding device and that, consequently, the responsibility for guarding rests with the employer or user. In support of this contention, appellee questioned several witnesses regarding the practicality of guarding presses and also regarding various safety standards embodied in OSHA and ANSI, placing the responsibility for guarding on the employer, and Ohio law, requiring the employer to maintain a safe work place. Bailey objected to some of the testimony regarding safety standards because the standards were not published until after the press was made and because the regulations were directed at employers and did not relieve manufacturers of their responsibility to produce safe machinery. Bailey's objections were overruled and the text of the relevant provisions was read to the jury and commented upon by both parties' experts.

In addition, appellee elicited testimony from its own expert that it was clearly understood in the industry, although not specifically codified until after the press in question was made, that the employer was responsible for guarding.

At the close of the evidence, Bailey reiterated his objection to the admissibility of the OSHA, ANSI, and Ohio standards. The court sustained Bailey's objections and refused to admit the regulations for the jury's consideration, noting that they were originally admitted in relation to other segments of appellant's claims.

The jury was instructed on the law of strict liability and, over Bailey's objection, assumption of the risk. The court refused Bailey's requested instructions on negligence, contributory negligence principles, and that the defendant may be held strictly liable for failing to comply with industry standards. In addition, the court refused to give a limiting instruction regarding the weight and relevance to be accorded industry standards embodied in OSHA, ANSI and Ohio law. The jury returned a general verdict in favor of the defendant.

## II.

■ We must first determine whether the district court reversibly erred in refusing to instruct the jury on the principles of comparative negligence, consistent with O.R.C. § 2315.19, in this strict liability action. In diversity cases, the doctrine announced in *Erie Railroad v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), dictates that federal courts must apply the law of the state's highest court. If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. *Sours v. General Motors Corporation*, 717 F.2d 1511, 1514 (6th Cir.1983); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir.1981); *Orfield v. International Harvester Co.*, 535 F.2d 959 (6th Cir.1976).

Since the Ohio Supreme Court has not addressed the issue *sub judice*, we must consider all relevant data to determine whether that court would apply the principles of comparative negligence to strict liability actions.[1] The sources of data which may guide our inquiry include the decisional law of the Ohio Supreme Court in analogous cases and relevant dicta in related cases, *McKenna v. Ortho Pharmaceutical Co.*, 622 F.2d 657, 662–63 (3d Cir.

1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 4507 (2d ed. 1982). The decisional law of Ohio appellate courts, *Waltzer v. Transidyne General Corp.*, 697 F.2d 130 (6th Cir.1983); *Tomlinson v. McCutcheon*, 554 F.Supp. 186, 188 (N.D.Ohio 1982); and Ohio trial courts, *Bradley v. General Motors Corp.*, 512 F.2d 602, 605 (6th Cir.1975); *Wolf v. Gardner*, 386 F.2d 295, 297 (6th Cir.1967) (common pleas decisions have weight to extent reasoning and conclusions persuasive), are accorded weight, although a federal court is not bound by lower court determinations if convinced by other data that the state's highest court would determine otherwise. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 462–66, 87 S.Ct. 1776, 1781–83, 18 L.Ed.2d 886 (1967); *Woodruff v. Tomlin*, 616 F.2d 924, 929 (6th Cir.1980), *cert. denied*, 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). In addition, consideration may be given to positions expressed in restatement of law, *Garrison v. Jervis B. Webb Co.*, 583 F.2d 258, 262 n. 6 (6th Cir. 1978), law review commentaries, *McKenna*, 622 F.2d at 662–63, and decisions from other jurisdictions or the "majority" rule. C. Wright, A. Miller & E. Cooper, *supra*, § 4507.

Ohio's Comparative Negligence statute provides, in relevant part:

> In negligence actions, the contributory negligence of a person does not bar the person ... from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was no greater than the combined negligence of all other persons from whom recovery is sought. Ohio Rev.Code Ann.

---

**1.** We note with approval the concerns expressed by this court in *Sours v. General Motors Corp.*, 717 F.2d 1511, 1520–21 (6th Cir.1983), regarding the unenviable position in which a federal court is placed when attempting to anticipate a ruling of the state's highest court in an important area of state law when jurisdictions are undergoing contrasting developments on a particular issue

and its resolution involves a delicate balancing of policy considerations. In this regard, it is interesting to observe the Ohio Supreme Court's own reticence to engage in such policy balancing by refusing to adopt a theory of comparative negligence prior to the enactment of O.R.C. § 2315.19. *See Baab v. Shockling*, 61 Ohio St.2d 55, 57, 399 N.E.2d 87 (1980).

§ 2315.19(A)(1) (Page 1981). (*emphasis added*)

On its face, this provision is limited to negligence actions. A products liability action is not a negligence action. In addition, a proposed, comprehensive products liability bill, introduced in the Ohio House in 1981–1982, would have made a plaintiff's misconduct a damage reducing factor in strict liability actions, consistent with the notion of comparative fault. *See* H.B. No. 779, 114th Ohio Gen.Assembly, Reg.Sess. (1981–82). This bill was not passed, the legislature declining to extend the principles of comparative fault to strict liability products actions. *See* B. Kasten, *Comparative Liability Principles: Should They Now Apply to Strict Products Liability Actions in Ohio?*, 14 U.Tol.L.Rev. 1151, 1198 (1983).

Bailey contends, however, that the Ohio Supreme Court, if presented with this issue, would extend the statute's application since it previously merged the defenses of contributory negligence and assumption of risk in actions brought under § 2315.19. *See Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780 (1983). This merger, Bailey maintains, indicates the court's recognition of the importance of principles of comparative fault. In addition, Bailey notes that a majority of other jurisdictions confronted with this issue have extended comparative negligence schemes to cover strict liability actions, and that the result promotes equity and fairness through loss allocation.

In fact, many commentators agree that a system of comparative fault would avoid unfairness by allocating risks, and that such a system may be accomplished by an expansive reading of § 2315.19. *See Hasten, supra*, at 1185–98 (and authorities cited therein). In our evaluation of the content of state law under *Erie*, however, we are not commissioned to take a position regarding the advisability or fairness of the state rule to be applied, but are to determine the issue as would the highest

court of the state. *See San Francisco Real Estate Investors v. J.A. Jones Construction Co.*, 703 F.2d 976, 977 n. 2 (6th Cir.1983).

In *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185 (1966), Ohio adopted the doctrine of strict tort liability together with assumption of risk as a defense to such an action. Ohio's strict liability law was clarified in *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 322, 364 N.E.2d 267 (1977), where the Supreme Court adopted the notion of strict liability as set forth in § 402A of the Restatement of Torts, together with its illustrative comments. Significantly, comment n. to § 402A, which was expressly applied in the Ohio appellate decision of *Jones v. White Motor Corp.*, 61 Ohio App.2d 162, 401 N.E.2d 223 (1978), explains that a plaintiff's contributory negligence is not a defense to a strict liability action, but his or her assumption of the risk is. Restatement (Second) of Torts § 402A comment n. (1977). The merger of these two defenses in *Anderson v. Ceccardi*, to which Bailey refers, applied only to actions brought under O.R.C. § 2315.19. Specifically, the *Ceccardi* court stated that this merger would permit the *negligence* of all parties to be apportioned by the court or jury pursuant to the statutory scheme. This holding is entirely consistent with the Restatement's definition of assumption of risk as a form of contributory negligence, and the language of the statute, limiting the applicability of O.R.C. § 2315.19 to "negligence actions". In addition, an Ohio common pleas court decision on the issue before us refused to extend the application of § 2315.19 to strict liability actions, based on the statute's limited wording. *See Robinson v. Parker-Hannifin Corp.*, 4 Ohio Misc.2d 6, 447 N.E.2d 781 (1982). We cannot, therefore, seize upon *Ceccardi's* merger of these defenses in *negligence* actions as indicative of the court's desire to effect a pervasive system of comparative fault, contrary to the express terms of the statute.[2] *See, generally, Bernardini v. Board*

---

**2.** This position is supported by the experience of other jurisdictions. California, for example,

*of Ed. for Conneaut Area School Dist.*, 58 Ohio St.2d 1, 387 N.E.2d 1222 (1979) (where statute unambiguous court cannot indulge in creative construction but must take statute as it is); *Columbus-Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 254 N.E.2d 8 (1969) (words of statute must be given plain meaning).

Rather, the Ohio Supreme Court has adhered to applying the theory of strict liability together with the assumption of risk defense, *See, e.g., Cremeans v. International Harvester Co.*, 6 Ohio St.3d 232, 452 N.E.2d 1281 (1983), and in light of the Court's frequent delineations of the differences in the policies and practices accompanying strict liability and negligence actions, it does not seem inclined to overhaul this scheme. *See Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185 (1966) (strict liability is separate theory); *Gast v. Sears Roebuck & Co.*, 39 Ohio St.2d 29, 313 N.E.2d 831 (1974) (to hold that existence of defect infers negligence would destroy distinction between strict liability and negligence in products cases); *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568 (1981) (rejecting argument that negligence and strict liability were equivalent theories of recovery in design defect action); *Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 432 N.E.2d 814, *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982) (substantial differences exist between negligence and strict liability theories); *See also* Comment, *Ohio's Rapidly Evolving, Frequently Disorderly Law of Strict Liability for Product Design Defects*, 14 U.Tol.L.Rev. 375 (1983).

In addition, the fact that other jurisdictions have extended comparative negligence statutes to cover strict liability actions,[3] while relevant, must be considered in light of the fact that a distinct minority of jurisdictions has refused to do so based on the limited language of their respective statutes and the theoretical incompatibility of strict liability actions and those based on negligence. *See Melia v. Ford Motor Co.*, 534 F.2d 795 (8th Cir.1976) (applying Nebraska law); *Kinard v. Coats Co.*, 37 Colo. App. 555, 553 P.2d 835 (1976); *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974); *Smith v. Smith*, 278 N.W.2d 155 (S.D.1979); *See also, Kasten, supra* at 1155–1160 (and authorities cited therein).

Therefore, we accept the district court's refusal to extend the Ohio principles of comparative negligence to actions in strict liability. Such a position is well founded in light of the absence of any authoritative Ohio interpretations to the contrary, the Supreme Court's recognition of the theoretical distinctions of the two theories, and the limited language of the statute itself. *See Rudd-Melikian, Inc. v. Roebuck & Co.*, 512 F.2d 276 (5th Cir.1975) (applying Mississippi law); *Trust Corp. v. Piper Aircraft Corp.*, 506 F.Supp. 1093 (D.Mont.1981) (applying Montana law); *Thibault v. Sears Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Suter v. San Angelo Foundry & Machine Co.*, 81 N.J. 150, 406 A.2d 140 (1979); *Lippes v. Atlantic Bank*, 67 App.Div.2d 127, 419 N.Y.S.2d 505 (1979); *Day v. General Motors Corp.*, 345 N.W.2d 349 (N.D.1984); *Sandford v. Chevrolet Div. of General Motors*, 292 Or. 590, 642 P.2d 624 (1982); *Jones v. M.T.D. Products*, 507 F.Supp. 8 (M.D.Pa.1980) (applying Pennsylvania law), *aff'd*, 649 F.2d 859 (3d Cir.1981); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984); *Mulherin v. Ingersoll-Rand Co.*, 628 P.2d 1301 (Utah 1981); *Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir.1979) (applying Virgin Islands law); *Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854 (W.Va.1982); *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967).

---

merged the defenses of assumption of risk and contributory negligence in negligence actions in 1975 but did not merge the defenses in strict liability actions until 1978. B. Kasten. *Comparative Liability Principles: Should They Now Apply to Strict Product Liability Actions in Ohio?*, 14 U.Tol.L.Rev., 1151, 1195–96 (1983) (and authorities cited therein).

**3.** *See, Butaud v. Suburban Marine & Sporting Goods*, 555 P.2d 42 (Alaska 1976); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976); *Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 654 P.2d 343 (1982); *Sun Valley Airlines v. Avco-Lycoming Corp.*, 411 F.Supp. 598 (D.Idaho 1976) (construing Idaho Comparative Negligence Statute); *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980); *Busch v. Busch Construction*, 262 N.W.2d 377 (Minn.1977); *Edwards v. Sears*

*Merritt,* 282 F.2d 924, 929 (6th Cir.1960) (where state law is unclear court of appeals should not reverse if district judge reached permissible conclusion); *Parham v. Hardaway,* 555 F.2d 139, 140 (6th Cir.1977) (accept district court's tenable view absent clarifying authoritative state interpretations).[4]

### III.

 Bailey next asserts that the district court reversibly erred in instructing the jury on assumption of the risk, claiming that the evidence was insufficient to support such a charge. The issue of assumption of risk is ordinarily to be determined by the jury, *Wever v. Hicks,* 11 Ohio St.2d 230, 234, 228 N.E.2d 315 (1967), and considers whether the plaintiff ventured into or acquiesced in a known, appreciated, or obvious risk. *Benjamin v. Deffet Rentals,* 66 Ohio St.2d 86, 89, 419 N.E.2d 883 (1981). In this case, evidence was presented to the effect that Bailey was instructed how to use the machine, told to keep his hands clear of the machine before activating it, that he had used the machine previously, and that he stepped on the foot pedal, activating the machine when his hand was at the point of operation. There was thus sufficient evidence to create a jury question regarding Bailey's assumption of risk. *See Briere v. Lathrop Co.,* 22 Ohio St.2d 166, 258 N.E.2d 597 (1970) (jury question presented where evidence of assumption of risk conflicts).

### IV.

 Bailey's next assignments of error relate to the relevance and admissibility of industry standards in proving product defectiveness, under Ohio law. Bailey first asserts that the district court reversibly erred in refusing a requested instruction that the defendant may be held strictly liable for failing to comply with industry standards of machine guarding. While

Bailey acknowledges that compliance with industry standards and custom is probative of a defendant's standard of care in negligence actions, Bailey does not challenge the district court's refusal to instruct the jury on his negligence action. In Ohio, the custom and standards of an industry are relevant to proving a manufacturer's standard of care in a negligence action. *Temple v. Wean United, Inc.,* 50 Ohio St. 317, 326, 364 N.E.2d 267 (1977); *Ball v. E.I. Du Pont De Nemours & Co.,* 519 F.2d 715, 717 (6th Cir.1975) (applying Ohio law); *Cf. DuPree v. Nutone, Inc.,* 422 F.2d 534, 536 (6th Cir.1970) (applying Michigan law). Bailey cites no authority in support of his contention that a manufacturer's standard of care is relevant to proving product defectiveness under a strict liability theory, where the product's condition and consumer expectations are the central inquiries and liability may be imposed regardless of the degree of care exercised by the manufacturer. *Knitz v. Minster Machine Co.,* 69 Ohio St.2d 460, 432 N.E.2d 814, *cert. denied,* 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982); *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1073 (3d Cir. 1979); *See also* Comment, *Ohio's Rapidly Evolving, Frequently Disorderly Law of Strict Liability for Product Design Defects,* 14 U.Tol.L.Rev. 375, 408–415 (1983) (discussing differences in these inquiries under Ohio law). We thus find no error in the district court's refusal of the requested charge.

 We must next consider the propriety of the district court's refusal to instruct the jury to limit the weight accorded testimony regarding industry standards embodied in OSHA and ANSI, which placed responsibility for guarding on the employer or user of the press, and O.R.C. § 4101.11, which directed employers to prevent workplace injuries. Although the district court ultimately refused to admit these regula-

---

**4.** *But Cf. Stearns v. Johns-Manville Sales Corp.,* 770 F.2d 599 (6th Cir.1985) (reversing district court's expansive interpretation of Ohio law which applied O.R.C. § 2315.19 to strict liability

actions in contravention of the express statutory language, giving no weight to the Supreme Court's distinction of the two theories, or the Common Pleas decision contrary).

tions into evidence because they were irrelevant to the strict liability action put to the jury, the text of the regulations had been read into evidence and extensively commented on by expert witnesses.

The district court's ultimate refusal to admit the regulations in question was consistent with, although predating, this court's decision in *Minichello v. U.S. Industries, Inc.*, 756 F.2d 26 (6th Cir.1985), regarding the admissibility of OSHA standards under Ohio law. The district court's decision was also consistent with *Hardiman v. Zep Mfg. Co.*, 14 Ohio App.3d 222, 470 N.E.2d 941 (1984), which held that compliance with O.R.C. § 4101.11, Ohio's safe place to work statute, may not be asserted as a defense to shield manufacturers from liability for defective products. *Minichello* and *Hardiman* were both based on strict liability. Other courts have similarly held OSHA regulations inadmissible in strict liability actions. *See McKinnon v. Skil Corp.*, 638 F.2d 270 (1st Cir.1981); *Murphy v. L & J Press Corp.*, 558 F.2d 407 (8th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Cf. Jaspar v. Skyhook Corp.*, 89 N.M. 98, 547 P.2d 1140 (1976) *rev'd on other grounds*, 90 N.M. 143, 560 P.2d 934 (1977) (OSHA regulations irrelevant in wrongful death action against manufacturer of industrial machinery). Therefore, the district court's ultimate refusal to admit these standards was appropriate. *But see Christner v. E.W. Bliss Co.*, 524 F.Supp. 1122 (M.D.Pa. 1981).

The court's failure to include a limiting instruction regarding this evidence, however, permitted unrestricted consideration of this testimony. In *Minichello*, we held that using OSHA regulations to establish that a product was unreasonably dangerous was improper because Congress specifically provided that OSHA should not provide a basis for civil liability in § 653(b)(4) of the act, and because such regulations do not bear upon the manufacturer—employee relationship, but govern the conduct of employers. 756 F.2d at 29. The *Minichello* panel also rejected the assertion that OSHA regulations could be admitted for the limited purpose of testing expert opinions regarding the product's defectiveness because such a "so called limited purpose ... is inseparable from the purpose for which we have shown the evidence to be inadmissible". *Id.* at 30. Even if such a limited purpose existed, the panel noted, since the jury was not told of the limited purpose, its consideration of the evidence was unrestricted. The error was considered prejudicial because of the necessary implication that a competent government agency, charged with the protection of workers' safety, had determined that the product posed no unreasonable hazards, from which the jury may have concluded the product was not defective. *Id.*

In the case *sub judice*, the safety standards in question were offered to demonstrate industry standards relevant to the manufacturer's standard of care in the negligence action. While the initial admission and use of this evidence may have been proper,[5] the court's failure to include a

---

5. Traditionally, compliance with safety standards or administrative regulations was considered evidence of non-negligence. Comment, *Ohio's Rapidly Evolving, Frequently Disorderly Law of Strict Liability for Product Design Defects*, 14 U.Tol.L.Rev. 375, 396 (1983) (citing W. Prosser, *The Law of Torts*, § 36 at 203 (4th ed. 1971)). In *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), the Ohio Supreme Court held that compliance with Ohio Industrial Code regulations for power presses demonstrated, as a matter of law, that the manufacturer was not negligent. *Cf. Owens v. Allis Chalmers Corp.*, 414 Mich. 413, 326 N.E.2d 372 (1980) (manufacturer compliance with govern-

ment and industry standards admissible regarding standard of care, though not conclusive).

In *Cremeans v. International Harvester Co.*, 6 Ohio St.3d 232, 452 N.E.2d 1281 (1983), the Ohio Supreme Court affirmed an appellate court's reversal of summary judgment in favor of the defendant manufacturer in a design defect, strict liability action. The majority held that a genuine issue of fact had been created by the pleadings and depositions which established, among other things, that "federal regulations" requiring additional safety features on the machine in question were being formulated at the time of manufacturing. 6 Ohio St.3d at 235, 452 N.E.2d 1281. The dissenting opinion referred to these standards as "inapplicable OSHA regula-

limiting instruction after submitting the case to the jury on the strict liability claim permitted unrestricted consideration of the testimony. Indeed, the jury was free to consider the testimony as demonstrating the nondefectiveness of the product, as proscribed in *Minichello* and *Hardiman.* Thus, given the extensive testimony offered, the lack of a limiting instruction regarding the weight and relevance of this evidence was likely to confuse and mislead the jury, and was highly prejudicial to plaintiff's case. *See* C. Wright & A. Miller, *Federal Practice and Procedure,* § 2558 (2d ed. 1981) (charge erroneous where confuses, misleads); *Carruba Transit Casualty Co.,* 443 F.2d 260 (6th Cir.1971); *See also, Murphy,* 558 F.2d at 412 (proper issue of feasibility of manufacturer guarding press, in strict liability action, was lost, and improper issue of who had duty to guard was tried). We therefore reverse and remand this case for proceedings consistent with this opinion.

tions." *Id.* at 237, 452 N.E.2d 1281. *See also Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 78, 472 N.E.2d 707 (1984) (appellant arguing OSHA and ANSI standards governing product use create issue of liability); *Hardiman v. Zep Mfg. Co.,* 14 Ohio App.3d 222, 223, 470 N.E.2d 941 (1984) (summarizing expert testimony that manufacturer complied with ANSI warning guidelines).

In *Minichello,* the panel specifically stated, "We do not mean to suggest that OSHA regulations can never be relevant in a product liability case, but OSHA regulations can never provide a basis for liability." 756 F.2d at 29.

It thus appears that although safety regulations may be inadmissible to prove the ultimate issue of defectiveness in strict liability actions, compliance with such codes and standards may be probative of a manufacturer's standard of care, in negligence actions. In addition, such regulations may be probative of a product's defective condition under certain circumstances where, for example, the regulation in question generally requires a particular safety feature as opposed to placing the legal responsibility for providing such a feature on one other than the manufacturer. *See e.g., Murphy v. L & J Press Corp.,* 558 F.2d 407 (8th Cir.), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1977) (improper issue of who had the duty to guard was tried); *Cf. Christner v. E.W. Bliss Co.,* 524 F.Supp. 1122, 1125 (M.D.Pa.1981) (industry customs admissible to determine customary stage at which safety feature installed); *See also* Comment, *supra,* at 377–378 (discussing Ohio legislative proposals to create rebuttable presumption of non-defectiveness where product complies with applicable federal or state statutes, standards, or safety rules).