914 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steven PELLETIER and Edith Pelletier, Plaintiffs-Appellees,
v.
CAREY CANADA, INC., Defendant-Appellant.
 No. 89-3844.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1990.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges, and SILER,* Chief District Judge.
 PER CURIAM:
 
 
 1
 Plaintiffs Edith and Steven Pelletier brought suit against defendant Carey Canada, Inc. (Carey), claiming damages by reason of alleged asbestosis contracted by Mr. Pelletier. Suit was based upon Ohio strict liability and upon common law negligence. The district court instructed the jury on both negligence and strict liability contentions. In response to special interrogatories, the jury concluded that Mr. Pelletier was exposed to asbestos fibers sold by Carey, that the asbestos in "flimsy" containers was defective and unreasonably dangerous, and that the asbestos product sold by defendant was the proximate cause of Mr. Pelletier's claimed injury.
 
 
 2
 The jury also concluded that Carey was negligent in selling the asbestos to Mr. Pelletier's employer, Celotex, but that Carey's negligence was not the proximate cause of the injury. The jury found that Mr. Pelletier had also been negligent, and that the negligence of Carey and Mr. Pelletier were each the proximate cause of 50 percent of the personal injury claimed.
 
 
 3
 After adjusting the jury's damages figures for settlements from other parties, the court entered final judgment against Carey in the amount of $45,000, plus prejudgment interest. Carey now appeals, raising various issues including sufficiency of the evidence and the district court's award of prejudgment interest.
 
 
 4
 Defendant claims that the strict liability claim was submitted to the jury on two theories: (1) failure to warn, and (2) defective packaging. Appellant proceeds to argue that because Ohio law does not recognize strict liability claims based solely on inadequate warning, and because there was very little evidence presented on the defective packaging issue, the district court erred in denying its motion for directed verdict on the strict liability claim.
 
 
 5
 In diversity cases, this court resolves questions of sufficiency of evidence by applying the appropriate test under state law. Moran v. Johns-Manville Sales Corp., 691 F.2d 811, 813 (6th Cir.1982). Under Ohio law, an issue is not to be taken from the jury unless reasonable minds could come to but one conclusion. Brown v. Best Products, Inc., 479 N.E.2d 852, 855 (Ohio 1985).
 
 
 6
 Carey is correct in contending that Ohio law will not allow strict liability to be based on inadequate warning alone. See Hardiman v. Zep Mfg. Co., 470 N.E.2d 941, 944 (Ohio App.1984), citing Knitz v. Minster Machine Co., 432 N.E.2d 814 (Ohio), cert. denied, 459 U.S. 857 (1982). See also Overbee v. Van Waters and Rogers, 706 F.2d 768, 770 (6th Cir.1983). Defendant, however, mischaracterizes the strict liability cause of action as it was presented to the jury in this case. In the jury charge conference, the trial court, over Carey's objection, determined to give the following instruction: "A strict liability case cannot be based solely on the failure to warn; however, it may be considered as one of the circumstances in your determination."
 
 
 7
 Defendant does not now argue that the court's instruction was incorrect,[1] and so the instruction is not properly before this court. Instead, the issue presented by defendant is whether the court erred in allowing the strict liability claim to go to the jury. Under Ohio law, a product may be considered defective (and thus subject to strict liability) "if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." State Farm Fire & Cas. v. Chrysler Corp., 523 N.E.2d 489, 490 (Ohio 1988), citing Leichtamer v. American Motors Corp., 424 N.E.2d 568 (Ohio 1981). See also Crislip, cited in n. 1. In a post-trial order, the district court found that the jury's determination with regard to the proof of defect in Carey's products was "consistent with and supported by the substantial evidence presented ..."
 
 
 8
 We cannot conclude that this finding was erroneous. The evidence indicated that Mr. Pelletier was exposed to Carey's asbestos products over a period of many years, and that he suffered from asbestosis. There was a sufficient showing that the product in question was unreasonably dangerous, bore no warning, and was inadequately packaged. We therefore sustain the strict liability finding in this particular case and based upon the circumstances as they relate to Pelletier.
 
 
 9
 We are persuaded that plaintiff did present adequate evidence, if believed, to sustain his burden of proof as to strict liability, and that reversible error in this regard has not been demonstrated. We therefore sustain the jury verdict in this respect, again, without indicating that this is a precedential conclusion that may carry over to others who may have handled the Carey asbestos product.
 
 
 10
 Appellant asserts that the district court erred in refusing to instruct the jury on assumption of the risk. Assumption of the risk is an affirmative defense in strict liability cases. In fact, it is an absolute bar to recovery. Its elements differ from those at issue in comparative fault defenses. In order to prevail on the affirmative defense of assumption of the risk, a defendant must demonstrate that the plaintiff voluntarily and unreasonably assumed a known risk. See Onderko v. Richmond Mfg. Co., 511 N.E.2d 388, 389 (Ohio 1987). This is a heavier burden than showing contributory negligence.
 
 
 11
 The trial court agreed to charge the jury on contributory negligence for the negligence count (regarding Pelletier's failure to use a respirator), but the court refused to instruct the jury on assumption of the risk for the strict liability count. Defendant asserts that this was error, claiming that contributory negligence and assumption of the risk are essentially similar doctrines and citing Anderson v. Ceccardi, 451 N.E.2d 780 (Ohio 1983). That case involved a negligence claim only and the Ohio Supreme Court held that Ohio's contributory negligence statute would be interpreted to merge the defenses of assumption of the risk and contributory negligence in apportioning fault under the circumstances of that negligence claim. 451 N.E.2d at 780. It should be remembered that Ceccardi was a negligence action, and dealt solely with fault apportionment; we find it was not controlling in the context of the strict liability claim. The correct application of the latter is found in Bowling v. Heil Co., 511 N.E.2d 373, 380 (Ohio 1987).
 
 
 12
 Bowling involved a similar situation to that in the instant case in that plaintiff claimed both negligence and strict product liability against defendant Heil Company. The jury found that deceased plaintiff was contributorily negligent but did not find that he had voluntarily assumed the risk of a defective product. The same conduct of Bowling was the subject of defendant's defenses of contributory negligence and assumption of risk. The Ohio Supreme Court had this to say in ruling that plaintiff's judgment in strict liabilty should not be reduced proportionately based on a finding of contributory negligence:
 
 
 13
 In the case sub judice, the jury found that Bowling was contributorily negligent but that he had not assumed a known risk. Therefore, his contributory negligence did not provide Heil with a defense to appellant's strict liability claim.
 
 
 14
 Bowling, 511 N.E.2d at 378.
 
 
 15
 In discussing the doctrine of assumption of risk, the Bowling court stated:
 
 
 16
 ... [V]oluntarily and unreasonably proceeding to encounter a known danger, ... commonly pass[ing] under the name of assumption of risk, is a defense under [Restatement (Second) of Torts Sec. 402A] as in other cases of strict liability.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 
 20
 [P]rinciples of comparative negligence or comparative fault have no application to a products liability case based upon strict liability in tort.[5] Strict liability, in focusing on the product rather than the conduct of its manufacturer or seller, does not seek to apportion a loss among all persons who have caused or contributed to it.
 
 
 21
 Bowling, 511 N.E.2d at 378, 380.
 
 
 22
 As reflected in Bowling, we had predicted correctly the Ohio law outcome in Bailey v. V & O Press Co., Inc., 770 F.2d 601 (6th Cir.1985), which analyzed Anderson v. Ceccardi, supra, and declined to construe it as applying comparative fault or contributory negligence standards in strict liability situations. Id. at 605, 606. See also Steams v. Johns-Manville Sales Corp., 770 F.2d 599 (6th Cir.1985).
 
 
 23
 While "the issue of assumption of the risk is ordinarily to be determined by the jury," it is for the court to determine whether there was sufficient evidence to submit the question to the jury. Bailey at 607, citing Wever v. Hicks, 11 Ohio St.2d 230, 234, 228 N.E.2d 315 (1967). Assumption of risk evidence would concern whether "plaintiff ventured into or acquiesced in a known, appreciated or obvious risk." Bailey at 607, citing Benjamin v. Deffet Rentals, 66 Ohio St.2d 86, 89, 419 N.E.2d 883 (1981). In Benjamin, the Ohio Supreme Court stated:
 
 
 24
 [T]here are certain affirmative defenses which do lend themselves to categorical proof, making summary judgment an effective tool for the avoidance of needless trials. An example of such a defense is assumption of risk.
 
 
 25
 419 N.E.2d 885.
 
 
 26
 The standards for deciding whether or not to submit a jury instruction on assumption of risk and granting summary judgment on that issue are similar in our view. "It is only when reasonable minds could come to but one conclusion that the issue [of assumption of risk] becomes one for the court." Wever v. Hicks, 228 N.E.2d at 318.
 
 
 27
 The defendant's motion for judgment notwithstanding the verdict and/or for a new trial urged that the verdict for the Pelletiers be set aside because of failure to prove a defect in the product and in proving only inadequate warning. In Moran v. Johns-Manville Sales Corp., 691 F.2d 811 (6th Cir.1982), however, manufacture or distribution of an unreasonably dangerous product and failure adequately to warn of the danger known or appreciated by the maker was held to be sufficient for a plaintiff complaining of resultant asbestosis to recover. Compare Overbee v. Van Waters & Rogers, 706 F.2d 768 (6th Cir.1983). Defendant's motion also mentioned failure to prove proximate cause. There was no contention made in defendant's motion for JNOV or for new trial about assumption of the risk and the district court's failure to instruct as to this defense. Failure to bring this contention before the district court, we believe, may constitute a waiver of such a claim before this court. In any event, however, evidence that Pelletier did not always use respirators or masks at defendant's plant does not constitute evidence that Pelletier voluntarily assumed and appreciated fully the known risk of asbestosis with respect to handling asbestos fibers regularly in the course of his employment. The defense of assumption of risk, as heretofore indicated, is different and involves a stronger showing than evidence of contributory negligence or comparative fault.
 
 
 28
 Pelletier, moreover, denied that anyone ever recommended to him specifically that he wear the paper mask in all areas ("a little white thing with a rubber band that goes around your head ... [with] a little metal clip or something you squeeze on your nose"), and he didn't wear it except where it was recommended ("the heater room").[2] He testified, then, that he wore it as recommended; there was no warning on the product or its packaging, and he knew nothing about the danger of asbestos. Even if we consider this challenge on assumption of risk, under the circumstances in this case, we find no prejudicial error in this regard.
 
 
 29
 At trial, Pelletier's doctor testified that he explained to Pelletier that persons with asbestosis are at an increased risk for cancer. (He also testified that Pelletier's smoking greatly magnified his risk.) Specifically, he stated, "Individuals with asbestosis have a 20 to 40 percent chance" of developing cancer. Defense counsel's objection to strike "the speculative part" of this testimony was overruled. Carey now argues that this testimony was speculative and prejudicial. Specifically, appellant asserts that under Ohio law, the establishment of proximate cause through expert medical testimony must be by probability.
 
 
 30
 Plaintiffs claim that the testimony was offered only to support damages for emotional distress based on the fear of developing of an asbestos-related cancer. Carey concedes that Pelletier neither sought nor received damages to compensate for a cancer that may or may not ever occur.[3] Error, if any, in this evidentiary ruling had no bearing in our view on the outcome. In sum, while we do not decide that the ruling was erroneous, it did not, in any event, deprive appellant of an essentially fair trial under the circumstances of this case. We reserve the propriety of allowing such proof for another time.
 
 
 31
 The trial court awarded prejudgment interest to plaintiffs pursuant to Ohio Rev.Code Sec. 1343.03(C). The Statute allows for prejudgment interest in cases where the party who is required to pay money failed to make a good faith effort to settle the case. It states that prejudgment interest shall be assessed "if, upon motion of any party to the action, the court [so] determines at a hearing held subsequent to the verdict or decision in the action ..." Defendant's brief states that the court ordered prejudgment interest without a hearing.
 
 
 32
 The verdict in this case was delivered on November 14, 1988. At that time, plaintiffs' counsel made an oral request for prejudgment interest. The court instructed plaintiffs' counsel to file a formal motion within 15 days to that effect, after which defendants would have 15 days to respond. Plaintiffs' counsel informed the court that he was not certain that a hearing would be necessary, but it would depend on whether or not defense counsel disputed his assertions. Defense counsel agreed to this proposition, stating: "Your honor, that would be my preference, to wait to see what Mr. Jennings [plaintiffs' attorney] discusses in his motion, to see whether it appears that I need a hearing or not. If I can oppose it in writing, I think I'll do that." Defendant's counsel never made a response to plaintiff's motion. Under the circumstances, we find defendant waived any objection under the statute.
 
 
 33
 Since defendant filed no response to plaintiffs' motion for prejudgment, we find no error, particularly since defendant also did not raise the issue in any post-trial motions.
 
 
 34
 Absent agreement by the parties to another means of proof, a hearing on a motion for prejudgment interest pursuant to R.C. 1343.03(C) must be evidentiary in nature so as to permit a documented basis for the trial court's decision as well as to provide a meaningful record for appellate review.
 
 
 35
 King v. Mohre, 513 N.E.2d 1366, 1367 (Ohio App.1986). The King case in our view does little to bolster defendant's claim, since we find that defendant's conduct here may well be construed as an agreement to waive a hearing.
 
 
 36
 That plaintiff Pelletier may have been found to be contributorily negligent on the negligence claim does not reduce the jury verdict rendered on the strict liability claim. Although this case presents close issues, we find that defendant has demonstrated no error with respect to liability or the amount of the judgment, including the prejudgment interest award.
 
 
 37
 We accordingly AFFIRM.
 
 
 
 [5]
 The Sixth Circuit, faced with this issue two years ago, predicted the result we reach today. See Bailey v. V & O Press Co., Inc., (C.A. 6, 1985), 770 F.2d 601. Accord Kroskey v. Ohio Edison Co., (1984), 20 Ohio App.3d 10, 20 OBR 10, 484 N.E.2d 704 (per George, J.)
 
 
 *
 THE HONORABLE EUGENE E. SILER, JR., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Defendant concedes that a later Ohio case decided before the hearing on appeal, Crislip v. TCH Liquidating, 52 Ohio St.3d 251 (1990), permits strict liability based on inadequate warning on a hazardous product
 
 
 [2]
 Plaintiff testified that the paper mask or respirator frequently tore and "wouldn't hold up at all." He testified also that the so-called "cartridge" type respirators sometimes provided were "useless."
 
 
 [3]
 In fact, Pelletier sought protection from being precluded from bringing suit in the event he should develop cancer in the future