**CALI–KEN PETROLEUM COMPANY, INC., Plaintiff,**

v.

**Frank MILLER d/b/a Miller Energy Company; and Charles Miller; and Glen Miller; and Preston Miller, Defendants.**

Civ. A. No. C87–0137–BG(H).

United States District Court, W.D. Kentucky, at Bowling Green.

March 11, 1993.

Norman Harned, David W. Anderson, Harned, Anderson & Bachert, Bowling Green, KY, for plaintiff.

Patrick A. Ross, Hensley, Dunn, Ross & Howard, Horse Cave, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter comes before the Court for re-examination of this Court's refusal to grant Defendants' request for summary judgment on the Blue Sky and fraud claims of the Complaint. Defendants unsuccessfully contended early in this litigation that the three year limitations period governed those claims. A review of the pertinent facts and law now persuades the Court that it should revise its earlier decision.

### I.

The parties do not dispute the material facts bearing on Defendants' statute of limitations defense. The sole issue, therefore, is whether those facts entitle Defendants to judgment as a matter of law. Fed.R.Civ.P. 56(c). Since this is a diversity action, Kentucky law governs the question at hand. *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985).

Plaintiff purchased working interests in three oil and gas leases from Defendants, who agreed to drill and complete a total of four wells on those leases. Defendants' alleged failure to perform these tasks prompted this lawsuit, which accuses Defendants of breach of contract, conversion, fraud, and violation of Kentucky's Blue Sky law.

The Blue Sky law punishes fraudulent sales of interests in oil and gas rights. KRS 292.310(13) *and* 292.320(1). The law provides no relief, however, to persons who file suit "more than three (3) years after the contract of sale." KRS 292.480(3). Plaintiff filed its Complaint on September 25, 1987. An evaluation of the dates and actions attending the formation of the contracts at issue will identify which, if any, of the agreements came into existence before September 25, 1984.

The parties negotiated first with respect to two wells located on the "Gilbert lease". Defendants offered Plaintiff an interest in those wells on October 14, 1983. Plaintiff paid for the first Gilbert well in two installments, on October 14, 1983 and October 31, 1983. Plaintiff made payments for the second Gilbert well on November 6, 1983 and October

26, 1984. Defendants assigned the Gilbert lease to Plaintiff on August 13, 1984 after many months' delay. The assignment did not become final until June 5, 1985, when the lease owner's signature was obtained and the assignment was recorded.

The parties next agreed on the sale of an interest in one oil well on the "Elkin Sisters" lease. Defendants offered that interest on January 14, 1984. Plaintiff paid the full consideration on the same day. Plaintiff alleges that Defendants have not yet completed the assignment of the Elkin Sisters lease.

The last transaction between the parties focused on one oil well located on the "McCoy" lease. Defendants presented their offer to Plaintiff on October 29, 1984. Plaintiff paid in two installments, the first on October 29, 1984, and the second on December 12, 1984.

### II.

■ An enforceable contract exists when the parties exchange a valid offer and acceptance. *Whitaker v. Associated Credit Services*, 946 F.2d 1222, 1226 (6th Cir.1991). The offer and acceptance must demonstrate "a mutual manifestation of assent, a meeting of the minds as to the terms of the contract." *Id.* The Blue Sky law identifies the date an offer is made as the moment that "the offer originates" and is "received at the place to which it is directed." KRS 292.313(3). An acceptance takes place "when acceptance is communicated to the offeror" and "is received at the place to which it is directed." KRS 292.313(4).

■ The three-year statute of limitations bars both transactions connected with the Gilbert lease. Defendants proposed the sale of the Gilbert interest on October 14, 1983. Plaintiff advanced partial payment for the first Gilbert well that same day; Plaintiff began payment for the second Gilbert well on November 6, 1983. By those acts, completed well before September 25, 1984, the parties manifested assent to their agreement and undertook reciprocal, enforceable obligations.

■ Nor should Plaintiff's later installment payments, or Defendants' delay in com-

pleting the agreed assignment, serve to postpone the moment that the Gilbert contract came into existence. Plaintiff cites no precedent in Kentucky or the Sixth Circuit which would dictate such a conclusion, and this Court's review of the applicable law has identified no support for Plaintiff's position. The better view, declared "sound" and worthy of adherence by the Tenth Circuit, would reject the contention that a series of installment payments converts the purchase of a security into a "continuing sale." *Wilson v. Al McCord Inc.*, 858 F.2d 1469, 1473–74 (10th Cir.1988). That court approved the analysis employed by Oklahoma law, under which the date of sale is calculated as the moment that "[e]ach party's rights and obligations were established." *Id.* at 1473. Were it otherwise, the statute of limitations could be extended indefinitely by the simple expedient of multiple installment payments. *Id., citing Adams v. Smith,* 734 P.2d 843 (Okla.Ct.App.1986).

The Elkin Sisters agreement also came into existence before September 25, 1984. Defendants offered the Elkin Sisters interest, and Plaintiff paid the entire purchase amount, on January 14, 1984. Only the McCoy transaction of October 29, 1984 falls within the limitation period imposed by KRS 292.480(3).

Plaintiff seeks to avoid this conclusion by arguing that its various dealings with Defendants constituted a "continuing relationship" culminating in a single contract, which came into existence only when the McCoy agreement was finalized. Again, Plaintiff cites no precedent in Kentucky or the Sixth Circuit which would support this view. The Seventh Circuit, however, rejected an argument similar to Plaintiff's in *Parrent v. Midwest Rug Mills,* 455 F.2d 123 (7th Cir.1972). The plaintiffs in that litigation argued that a series of securities transactions, spanning six years, should be considered a single, fraudulent "total scheme" for purposes of an Illinois statute of limitations which allowed buyers three years "from the date the sale is completed" to file suit. *Id.* at 128. The Seventh Circuit determined that the correct view would consider the various transactions as being "independent of each other." *Id.* The

court commented that "[t]here is no reason why, if the transactions were alleged in separate counts in plaintiffs' complaint, recovery as to each count might not be had, under proper proof...." *Id.*

The Court finds this view persuasive in no small measure because it is consistent with the plain language of Kentucky's Blue Sky law, which defines "sale" to include every "disposition of a security or interest in a security for value", dictating an interpretation which would treat each discrete transaction in a security as an independent sale. KRS 292.310(11). The same section defines "security" to include "*any* note, stock, ... [or] fractional undivided interest in oil, gas, or other mineral rights...." KRS 292.-310(13) (emphasis added). Thus the Blue Sky law clearly contemplates the imposition of sanctions on *each* sale of *any* security, not merely cumulative schemes to defraud. It would indeed be difficult to contend that Plaintiff could *not* recover separately for each oil and gas lease sold by Defendants.

Kentucky's highest court construed the Blue Sky law in a similar fashion when reviewing a criminal prosecution under KRS 292.320(1). *Queen v. Commonwealth,* 434 S.W.2d 318, 321 (Ky.1968). The court held that the Blue Sky provisions "intended that each separable sale transaction should constitute a separate offense, at least where the charged fraud, deceit or misrepresentation was made in each transaction as distinguished from being in the form of a general public advertisement or prospectus." *Id.* at 323. There appears to be no principled reason why the law should be interpreted differently in a civil litigation.

### III.

The essence of fraud is concealment. It is therefore a "venerable principle" in American law that the limitations period for lawsuits alleging fraud ordinarily begins only when the fraud is discovered. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). The Sixth Circuit applied this equitable tolling provision when that court adopted the Blue Sky law's limitation period for purposes of federal securities

fraud litigation. *Herm v. Stafford*, 663 F.2d 669, 682 (6th Cir.1981). Other Circuit Courts, adjudicating securities fraud actions arising under state law, have declared that Blue Sky laws like Kentucky's contain a discovery exception in their statutes of limitations. *See, e.g., Landry v. All–American Assurance Co.*, 688 F.2d 381, 392–94 (5th Cir.1982). The question naturally arises, then, whether Kentucky's Blue Sky law also includes a discovery exception tolling the application of KRS 292.480(3) to Plaintiff's claims.

The Blue Sky law contains no express discovery exception. In fact, its definitive language, which triggers the limitation period at the moment of the "contract of sale" rather than at a broader "moment of injury", suggests that no such exception applies. The case law construing KRS 292.480(3), though scarce, offers no indication that the Kentucky courts would recognize an implied discovery exception. *See City of Owensboro v. First U.S. Corp.*, 534 S.W.2d 789, 791 (Ky.1975) (holding that "the period of limitation" for an action alleging misrepresentation in the sale of securities "is two years from the date of sale as provided in the Blue Sky Law, KRS 292.480(3)"); *accord, Hutto v. Bockweg*, 579 S.W.2d 382, 385 (Ky.App.1979).

Had the Kentucky legislature intended to delay lawsuits under KRS 292.320(1) until discovery of the fraudulent conduct, it presumably would have incorporated that provision into the Blue Sky statute itself, just as it had expressly tolled common law fraud litigation through KRS 413.130(3).[1] Other states

have taken precisely this approach. *See Cors v. Langham*, 683 F.Supp. 1056, 1058 (E.D.Va. 1988). For whatever reason, it appears that the Kentucky legislature intentionally omitted a discovery exception.[2] This Court will respect that legislative intent as expressed in the plain language of the statute.[3]

Most important of all, perhaps, is the Blue Sky law's command that courts construe its provisions "so as to ... make uniform the law of those states which enact [Blue Sky laws] and to coordinate the interpretation and administration of this chapter with related federal regulation." KRS 292.530. This overriding policy lends significant weight to the Supreme Court's recent pronouncement that litigation under federal statutes virtually identical to Kentucky's Blue Sky law[4] "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf*, 111 S.Ct. at 2782. The Court specifically refused to incorporate an open-ended tolling provision into this three year maximum limitation period. *Id.* Individual states, too, may soon conform the limitations periods of their Blue Sky laws to the one adopted by the Supreme Court. The Uniform Securities Act, upon which Kentucky's Blue Sky law is modeled, revised its statute of limitations in 1985 to require commencement of litigation "within the earliest of one year after the discovery of the violation ... or three years after the ... transaction constituting the violation." *Unif. Sec. Act* § 606 (1985). Among other things, adoption of an unlimited discovery exception for securities fraud litigation would place Kentucky's Blue

---

1. KRS 413.130(3) contains a statutory discovery exception which declares that actions alleging fraud "shall not be deemed to have accrued until the discovery of the fraud...." This initially sympathetic treatment of fraud litigation is immediately tempered by the same law's insistence that such litigation "be commenced within ten (10) years after the time of the making of the contract...." *Id.* Kentucky law thus provides significant, but still tentative, support for the tolling of actions alleging fraud.

2. The omission may have been a *quid pro quo* taken in return for the Blue Sky law's generous recovery provisions. Kentucky's highest court has observed that "[s]ome of the inhibiting strictures of the law of misrepresentation are relaxed [by the Blue Sky law,] and the price exacted is

the shorter limitations period." *City of Owensboro,* 534 S.W.2d at 789.

3. At least two other District Courts evaluating statutes and policies similar to Kentucky's have refused to recognize a discovery exception for blue sky litigation. *Brumbaugh v. Princeton Partners,* 766 F.Supp. 497, 499–500 (S.D.W.Va.1991); *Cors,* 683 F.Supp. at 1058–59 (interpreting Virginia Securities Act).

4. *I.e.* Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. The Sixth Circuit has commented that the language and purpose of the Blue Sky law's anti-fraud rules are "nearly identical" to these federal provisions. *Carothers v. Rice,* 633 F.2d 7, 15 (6th Cir.1980).

Sky law well outside the mainstream of both state and federal legislation and would frustrate the express goal of uniformity contained in KRS 292.530.

## IV.

■ The provisions of the Blue Sky law are fatal to Plaintiff's allegations of common law fraud, as well. Kentucky's Blue Sky law provides the exclusive remedy for fraud in the sale of securities. *City of Owensboro*, 534 S.W.2d at 791; *Herm*, 663 F.2d at 678. The transactions for which Plaintiff seeks recovery fall under the provisions of the Blue Sky law; Plaintiff's remedy, if any, must be found there.

The statute of limitations contained in KRS 292.480(3) bars recovery for Plaintiff under the Blue Sky law for alleged losses arising from the Gilbert and Elkin Sisters transactions. Plaintiff may continue to pursue recovery under the Blue Sky law for losses resulting from the McCoy lease, however. The exclusive remedy for securities fraud established by the Blue Sky law requires dismissal of Plaintiff's claims of common law fraud with respect to all three transactions at issue. Plaintiff nevertheless may still seek to recover for its injuries under its causes of action for conversion and breach of contract.

The Court is entering an Order consistent with the findings of this Memorandum Opinion.

## ORDER

This matter is before the Court for reconsideration of Defendants' Motion for summary judgment, which requests dismissal of several claims arising under Kentucky's Blue Sky law, KRS 292.310 *et seq.* The Court having reviewed this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that this Court's Order of April 20, 1990, which had denied Defendants' Motion for summary judgment, is RESCINDED; and

IT IS FURTHER ORDERED that Defendants' Motion for summary judgment is GRANTED with respect to claims arising from the Gilbert and Elkin Sisters leases; and

IT IS FURTHER ORDERED that Defendants' Motion for summary judgment is DENIED with respect to the claim arising from the McCoy lease; and

IT IS FURTHER ORDERED that Plaintiff's causes of action alleging fraud are DISMISSED with respect to all three transactions; and

IT IS FURTHER ORDERED that this Court's Order of August 17, 1990, which had granted Plaintiff's Motion that voir dire examination be conducted by the parties rather than by the Court, is RESCINDED and Plaintiff's Motion is DENIED. The Court shall conduct the voir dire examination, but shall duly consider any proposed questions offered by the parties.